UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MARVIN DEVELLE BENTLEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 7:20-cv-1792-GMB |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

On August 16, 2018, Plaintiff Marvin Develle Bentley filed an application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with an alleged disability onset date of May 29, 2018. Bentley's applications were denied at the initial administrative level on February 15, 2019. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on December 2, 2019, and he denied Bentley's claims on January 28, 2020. Bentley requested review of the ALJ's decision by the Appeals Council, which declined review on September 20, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administration (the "Commissioner") as of September 20, 2020.

Bentley's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rules of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 10. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

---

[2] In general, the legal standards are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255

F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Bentley bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Bentley was born on March 19, 1973, and he was 45 years old on the date of his alleged onset date. R. 25, 179. He lives with his mother and does not have any income. R. 49. Bentley competed school through the ninth grade. R. 37, 215. He previously worked as a truck driver and landscape laborer. R. 37–39, 57, 205, 215. His primary complaints are complications from a stroke: right-side weakness, including poor balance and lack of strength in his right hand, lack of focus and concentration, and lower back pain; and symptoms related to diabetes. R. 39–52. In his disability report, Bentley alleged that he is unable to work because of a stroke

and back pain. R. 214.

Applying the sequential evaluation process, the ALJ found that Bentley has not engaged in substantial gainful activity since his alleged onset date of May 29, 2018.[3] R. 17.  At step two, the ALJ found that Bentley suffered from the following impairments: status post cerebrovascular accident, diabetes mellitus type II, lumbar degenerative disc disease, osteoarthritis, neuropathy, depression, and neurocognitive disorder.[4] R. 17.  The ALJ noted that these medically determinable impairments significantly limit Bentley's ability to perform basic work activities. R. 18.  At step three, the ALJ found that Bentley did not have an impairment or combination of impairments meeting or medically equal to the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 18–20.

Before proceeding to step four, the ALJ determined that Bentley had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that

> the claimant needs to avoid climbing ladders, ropes or scaffolds and to avoid unprotected heights.  He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  The claimant can have occasional exposure to extreme temperatures, wetness, humidity and pulmonary irritants in the work environment.  As it relates to the use of the right upper extremity, he can frequently use arm controls, push, pull and handle.  The claimant is limited to understanding, remembering and

---

[3] Although Bentley earned $13,744 in 2018, this amount is below the annual substantial gainful activity threshold of $14,160. R. 17.
[4] The ALJ found Bentley's obesity to be non-severe. R. 18.  Bentley does not challenge this finding.

    carrying out simple instructions with customary breaks every two hours. Changes in the work setting and contact with the public should be infrequent, or less than occasional.

R. 20. At the fourth step, the ALJ determined that Bentley was unable to perform his past relevant work as a truck driver and landscape laborer. R. 25. However, the ALJ concluded that there are jobs existing in significant numbers in the national economy that he can perform. R. 25–26. Therefore, the ALJ concluded that Bentley has not been under a disability as defined by the Social Security Act from May 29, 2018 through the date of the decision. R. 26. Based on these findings, the ALJ denied Bentley's applications for DIB and SSI. R. 27.

## IV. DISCUSSION

Bentley makes two arguments on appeal. He first argues that the ALJ gave too little weight to his examining physicians and too much weight to the non-examining state agency physicians. Doc. 13 at 8–10. Second, Bentley contends that the ALJ erred when he failed to consider Bentley's need for a cane in his RFC formulation. Doc. 13 at 10–11. The court rejects Bentley's arguments for the following reasons.

**A.   Physician Opinions**

Bentley argues that the ALJ did not give proper weight to the opinions of his treating physician, Dr. Perry Timberlake, and of his examining consultative psychologist, Dr. John R. Goff. Doc 13 at 3–5, 8–10. If they are given proper weight,

Bentley contends that these opinions establish he is unable to work. Doc. 13 at 3, 9–10.

Before addressing the physicians' opinions, the court notes that Bentley's brief relies on a treating physician rule that is now obsolete. The Social Security Administration has adopted new regulations governing the Commissioner's evaluation of medical opinions for claims, like Bentley's, filed after March 27, 2017.

The Eleventh Circuit developed the treating physician rule "as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disab. Plan v. Nord*, 538 U.S. 822, 829 (2003). Under this rule, the Eleventh Circuit required an ALJ to articulate good cause for discounting the opinion of a treating physician. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The Social Security Administration then formalized the treating physician rule in 1991, implementing regulations that required ALJs to "give more weight to medical opinions" from treating sources and to "give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

The new regulations eliminate the treating physician rule and its hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). The Commissioner has "full power and authority to make rules and regulations" related to the proof and evidence needed to establish a right to benefits under the Social Security Act. 42

U.S.C. § 405(a). And "[a] court's prior judicial construction of a statute trumps an agency construction . . . only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Here, the Social Security Act requires the Commissioner to "make every effort to obtain from [an] individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B) & 1382c(H)(i). But it does not specify how the ALJ should evaluate treating source evidence, and Bentley has not directed the court to any decision in which the Eleventh Circuit has held that the Social Security Act mandated the treating physician rule.[5] Nor has Bentley asserted that the 2017 regulations are arbitrary, capricious, or otherwise invalid. *See Chevron,*

---

[5] The Eleventh Circuit has not spoken directly on this question in a published opinion. *See Simon v. Comm'r, Social Sec. Admin.*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021) ("Because Simon filed his claim [before the new regulations], we need not and do not consider how the new regulation bears upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."). However, in a recent unpublished opinion, *Glasby v. Social Security Administration, Commissioner*, 2022 WL 1214015, at *3 (11th Cir. April 25, 2022), the Eleventh Circuit found that the ALJ did not err in applying the new regulations in his assessment of a treating source's medical opinion. The court explained that the Commissioner has the authority to prescribe rules and regulations "necessary or appropriate to carry out" the functions of the administration and observed that judicial review of those regulations is limited to whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Id.*

*U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 845 (1984) (holding that courts must defer to validly adopted regulations). Therefore, the court will apply the 2017 regulations, not the treating physician rule, to the ALJ's evaluation of the opinion evidence in this case.

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant or specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2). With these new regulations as the guide, the court turns to the ALJ's treatment of Dr. Timberlake's and Dr. Goff's opinions.

### 1.   *Dr. Timberlake*

Bentley points to Dr. Timberlake's office records from August 1, 2018, which state that Bentley is "unable to work from his stroke and lumbar radiculopathy" and

that he "is completely and totally disabled to gainful work now or in the future and would be a danger to himself and others if he tried." R. 360, 361. He also highlights an October 2019 medical source statement in which Dr. Timberlake opined that Bentley could sit for two hours and stand or walk for one hour during an eight-hour workday, that he would require an assistive device to ambulate in a normal workday, and that he would be absent from work more than three times per month due to his conditions. R. 656. He also opined that Bentley could rarely push, pull, or climb stairs and ladders, and he only occasionally could perform gross and fine manipulation, operate motor vehicles, or work around hazardous machinery. R. 656.

Substantial evidence supports the ALJ's decision not to find Dr. Timberlake's opinion persuasive and the court finds that the ALJ properly evaluated his opinion under the new regulations. R. 22–23. Dr. Timberlake's opinion that Bentley is "completely and totally disabled" (R. 361) is not a medical opinion and is "inherently neither valuable nor persuasive to the issue" of whether a claimant is disabled. 20 C.F.R. §§404.1520b(c)(3)(i) & 416.920b(c)(3)(i). On the other hand, Dr. Timberlake's medical source statement contains a series of questions prompting him to circle or check responses or to fill in blank spaces without explanations for his answers. R. 446. Without explanation or extrapolation from Dr. Timberlake, the form has little probative value. Indeed, several courts have criticized these "form reports," where a physician merely checks off a list of symptoms without providing

11

an explanation of the evidence supporting the decision. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (finding that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions"). The court acknowledges, however, that the use of such forms "is not a basis, in and of itself, [to] discount them as conclusory." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019) (emphasis added).

In addition, Dr. Timberlake's form report and his opinion that Bentley is totally disabled stand in contrast to his own treatment notes and conservative treatment regimen for Bentley's physical conditions. For example, in May 2019, Dr. Timberlake reported his physical examination of Bentley as normal with no mention of paralysis or any lasting effects from Bentley's stroke, and he noted Bentley's ambulation was normal. R. 663. Dr. Timberlake described Bentley as

healthy, well-nourished, and well-developed. R. 663.  Then, on the same day Dr. Timberlake completed the medical source statement, Bentley saw Dr. Timberlake for a medication refill, reported no adverse effects from the medication, and his examination findings were largely normal[6] with no mention of any paralysis or lasting effects from the stroke.  Dr. Timberlake found his diabetes mellitus to be stable and controlled without any medication complications. R. 658–60.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Bentley's medical evidence and did not err in discounting Dr. Timberlake's opinion.  The ALJ clearly articulated his reasons for finding that the opinion was not well supported and was inconsistent with the medical records.  The court finds that substantial evidence supported this decision.

### 2. *Dr. Goff*

Bentley highlights the following portion of Dr. Goff's psychological evaluation from February 12, 2019:

> He has obvious motor problems.  He walks very slowly.  He has difficulty controlling his right arm.  He has a right facial paralysis and all of the other implications.  His speech is rather slurred. . . .  During this examination, he was able to understand instructions fairly well.  He just cannot carry them out.  He cannot use his right hand effectively and he has partial paralysis of the right leg.  He has some difficulty responding verbally because of the facial paralysis that he has.

---

[6] Dr. Timberlake noted some tenderness in Bentley's wrists and lumbar spine area. R. 659.

R. 502.[7]

Substantial evidence supports the ALJ's decision to find Dr. Goff's opinion not to be persuasive. First, the Disability Determination Service referred Bentley to Dr. Goff for a mental health evaluation. R. 500. Dr. Goff did not perform a physical examination of Bentley, nor does his training as a clinical neuropsychologist qualify him to do so. Any opinion on Bentley's physical impairments is outside of Dr. Goff's area of specialty.

Second, Dr. Goff's opinion is not consistent with the other medical evidence in the record. For example, Dr. Goff's opinion on many of Bentley's physical limitations does not align with Dr. Timberlake's observations. As discussed in detail above, Dr. Timberlake's May 2019 treatment notes described Bentley's ambulation as normal and did not mention any paralysis or lasting effects from the stroke. R. 663. In fact, Bentley has not directed the court to any medical evaluation supporting Dr. Goff's opinion about his slurred speech, limb paralysis, or facial paralysis. And, as the ALJ noted, these findings were inconsistent with Bentley's

---

[7] Bentley's brief also includes a quotation from Dr. Goff's opinion relating to Bentley's memory and ability to manage stresses in the workplace. Doc. 13 at 4–5. Bentley does not make any substantive argument related to these findings. And while the ALJ did not specifically evaluate the persuasiveness of these opinions, any oversight here is harmless. The ALJ accounted for Dr. Goff's opinion by limiting Bentley's RFC to understanding, remembering, and carrying out simple instructions; infrequent changes in the work setting; and infrequent contact with the public. R. 20. Bentley does not challenge the ALJ's findings that he had only moderate limitations in understanding, remembering, or applying information. *See* Doc. 13.

appearance at the hearing.

Dr. Goff's limitations also diverge from the examination findings of Dr. Joseph V. Marino, a family medicine doctor who saw Bentley on December 15, 2018. R. 493–98. While Dr. Goff said that Bentley could not use his right hand, Dr. Marino found that Bentley could grasp and manipulate both large and small objects with the first three digits of both hands, use his right hand to lift up to 20 pounds, and occasionally handle objects with his right hand. R. 496–97. And Dr. Goff's opinion on Bentley's right leg is inconsistent with Dr. Marino's examination findings that Bentley's muscle strength was 5/5 in both legs, straight leg raising in the seated position was normal in both legs, and he did not require an assistive device to walk. R. 496–97.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Bentley's medical evidence and did not err in finding Dr. Goff's opinion not to be persuasive. The ALJ clearly articulated his reasons for finding the opinion was not well supported by the medical records. The court finds that substantial evidence supported this decision.

**B.     RFC Formulation**

Bentley contends that the ALJ should have included his need for a cane in his RFC formulation. Doc. 13 at 10–11. The record does not support this contention. Bentley did not testify that he used a cane during the hearing before the ALJ. R. 45.

Instead, Bentley admitted Dr. Timberlake did not recommend a cane, but offered that someone at DCH Regional Medical Center recommended that he "use a crutch and stuff at first." R. 45.  Despite this recommendation, Bentley "tried to do it on [his] own and tried to stretch [himself] . . . instead of depending on it." R. 45.  Bentley also admitted in his September 2018 function report that he did not use a cane and had stopped using crutches. R. 242.

Moreover, there is nothing in the medical evidence to indicate Bentley needs to use a cane.  In fact, the medical evidence suggests the opposite.  For instance, in June 2018, an emergency room doctor stated that Bentley was "able to ambulate with a steady gait" (R. 294), and Dr. Marino's notes in December 2018 indicate that Bentley did not use an assistive device for walking. R. 495.  Even Dr. Goff did not say Bentley needed a cane when noting that Bentley had difficulty with walking in February 2019. R. 501–02.

The only record evidence the court has found[8] even suggesting a need for a cane is Dr. Timberlake's medical source statement from October 4, 2019, where he checked "yes" next to the question "[d]oes this patient require an assistive device . . . to ambulate even minimally in a normal work day?" R. 656.  As discussed above, however, Dr. Timberlake's own medical records do not support the opinions

---

[8] Bentley did not point the court to any medical documents in the record supporting his need for a cane.

memorialized on this form. For instance, in May 2019, Dr. Timberlake noted that Bentley was "ambulating normally." R. 663. There is nothing in the medical record suggesting such a rapid deterioration from normal ambulation to an inability to minimally ambulate without a cane only six months later. In sum, substantial evidence supports the ALJ's decision not to incorporate the use of a cane into Bentley's RFC formulation.

## V. CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. A final judgment will be entered separately.

DONE and ORDERED on June 22, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE